**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| WEWOREWHAT, LLC, and ONIA, LLC,<br><br>                      Plaintiffs,<br><br>     v.<br><br>CV COLLECTION, LLC,<br>d/b/a THE GREAT EROS<br><br>                 Defendant. | Case No.: 1:20-cv-8623<br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFFS WEWOREWHAT, LLC AND ONIA, LLC'S COMPLAINT**
**FOR DECLARATORY JUDGMENT OF NON-INFRINGEMENT**

Plaintiffs WeWoreWhat, LLC ("WWW") and Onia, LLC ("Onia") (collectively, "Plaintiffs"), by and through their attorneys, for their complaint against Defendant CV Collection, LLC d/b/a The Great Eros ("Defendant"), allege as follows:

**NATURE OF THE CLAIMS AND RELIEF SOUGHT**

1.      Plaintiffs seek a declaratory judgment that Plaintiffs' use of their WWW Silhouettes Design does not infringe or otherwise violate Defendant's purported copyright or any other rights under the Lanham Act or common law.

**THE PARTIES**

2.      Plaintiff WeWoreWhat, LLC is a New York limited liability company with its principal place of business c/o Monarch Business & Wealth Management, LLC, 209 East 31st Street, New York, New York 10016.

3.      Plaintiff Onia, LLC is a New York limited liability company with its principal place of business at 10 East 40th Street, 37th Floor, New York, New York, 10016.

4.      Defendant CV Collection, LLC d/b/a The Great Eros is a New York limited liability company with its principal place of business at 116 Ainslie St., Brooklyn, NY 11211.

## JURISDICTION AND VENUE

5.      Jurisdiction is proper in this court because this litigation arises under federal law, namely 15 U.S.C. § 1121 et seq. and 17 U.S.C. §§ 101 et seq., and related state and common law pertaining to unfair competition and/or deceptive trade practices.

6.      The Court has jurisdiction over this action under Section 39 of the Lanham Act, 15 U.S.C. § 1121(a), and the Judicial Code, 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1338(a) (copyrights), 28 U.S.C. § 1338(b) (unfair competition), and 28 U.S.C. § 2201 (Declaratory Judgment Act).

7.      This Court has personal jurisdiction over Defendant because it is a resident of the State of New York and is domiciled in this District.

8.      Venue is proper in this District under 28 U.S.C. §§ 1391(b) and 1391(c) because, a substantial part of the events giving rise to Plaintiffs' claims occurred in this District, Plaintiffs are being harmed in this District, and because the Defendant is subject to personal jurisdiction in this District.

9.      An actual case or controversy exists between the parties, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.  Specifically, Defendant has claimed in a threatening letter sent by Defendant's counsel that Plaintiffs are committing copyright infringement and are engaged in unfair competition via their use of the WWW Silhouettes Design.

10.     Defendant has demanded Plaintiffs cease and desist from using Plaintiffs' own WWW Silhouettes Design, alleging that it infringes Defendant's purported copyright.  Defendant has made an actual threat to file a district court litigation later this week against Plaintiffs and sent

a draft of such complaint to Plaintiffs. Defendant's actions and statements threaten injury to Plaintiffs.

11.    Based on the foregoing, there is a case or controversy based on a real and immediate injury or threat of future injury that is caused by Defendant. A justiciable controversy exists between Plaintiffs and Defendant as to whether Plaintiffs infringe or violate Defendant's copyright or other rights, and there is sufficient immediacy and reality to warrant the issuance of a declaratory judgement.

## FACTUAL BACKGROUND

### WeWoreWhat

12.    Danielle Bernstein created the world-renowned fashion blog @weworewhat ten years ago to provide a daily dose of outfit inspiration from every corner of NYC. She was placed on the Forbes 30 Under 30 list before the age of 25, and most recently, made it onto the New York Times Bestseller list for her first book, "This Is Not a Fashion Story."

13.    In 2014, Ms. Bernstein formed WWW to sell her own fashion lines. In 2016, she launched her line of overalls and jumpsuits. In 2017, she collaborated with lifestyle brand Onia and designed her first WeWoreWhat x Onia swimwear capsule collection.

14.    In 2018, Ms. Bernstein brought both of her brands under one roof with the launch of Shop WeWoreWhat. Her brand is consistently expanding with new categories like denim and activewear. In 2019, she launched her own swimwear line with Onia as her partner.

15.    In 2019, Ms. Bernstein launched the tech startup Moe Assist, to help creators manage their businesses more efficiently with technology. Moe Assist also launched the Global Creators Community in 2020, to empower creators to grow and thrive through providing access to resources and a global network of industry leaders, and to create more inclusivity and diversity within the influencer landscape.

16.     When the COVID-19 pandemic began to devastate the world in 2019, Ms. Bernstein felt a responsibility to use her platform to reach out to help others.  She called on her more than 2.5 million followers and the response was powerful.  In the first months of the pandemic, Ms. Bernstein and the WeWoreWhat community helped keep dozens of small businesses afloat and donated tens of thousands of dollars to organizations that needed it most. She created a charitable arm of her business, as a way to continue these giveback initiatives past the pandemic.

17.     Ms. Bernstein founded WeGaveWhat to amplify the power of social media as a tool to raise awareness of amazing, diverse small businesses and organizations and to inspire collective action.  The goal of WeGaveWhat is to give anyone and everyone an outlet to create change and support issues bigger than themselves.

### Onia

18.     In 2009, Carl Cunow and Nathan Romano co-founded Onia, a lifestyle brand inspired by modern voyagers.

19.     Onia, which means 'sailboat' in Hebrew, represents Carl and Nathan's shared passion for adventure—whether on the sea or off the beaten path—journeys of discovery and fine craftsmanship, rooted in superior design.

20.     A fashion executive with experience working on four continents, Carl brings longstanding relationships with artisans and boutique manufacturers to the company. Nathan, a sales and licensing visionary, oversees several facets of the business, including marketing and brand development.

21.     From swimsuits to loungewear, overnight bags to beach blankets, the range is created with versatility in mind—seamlessly transitioning from the daily routine to faraway retreats, and with the ability to beautifully withstand the rigors of traveling.

22.     Innovative yet timeless, comfortable and purposeful, the designs all combine great construction with outstanding materials to deliver refined wardrobing options for men and women. The apparel is minimal yet thoughtfully detailed, wearable and well-fitting—thanks in part to the fabrics, which are sourced from the world's finest mills for their high quality and performance features.

23.     Onia is committed to making the experience of stylish traveling more achievable and the concept of easy living, not just a luxury but an attainable touchstone, every single day.

**The WWW Silhouettes Design**

24.     As part of Plaintiffs swimwear collection, the WWW Silhouettes Design, shown below, was independently created for WWW by WWW and Onia designers.



25.    The WWW Silhouettes Design was inspired by the generally ubiquitous concept of silhouette drawings of the human form along with a number of Henri Matisse's line drawings, as shown in the images below:









26.     The WWW collection uses the WWW Silhouettes Design for swimsuits:











27.     Because the WWW Silhouettes Design was a favorite swimwear print, WWW put the WWW Silhouettes Design onto peel and stick wallpaper and other products such as scarfs, bandeau bra tops, and leggings:





**The Great Eros**

28.     Defendant owns and operates The Great Eros, a fashion label founded by designer Christina Viviana, that launched in 2016 and primarily sells lingerie and leisurewear.

29.     Upon information and belief, Defendant uses the following tissue paper when wrapping customer purchases from The Great Eros:



**False Allegations of Infringement**

30.    On August 10, 2020, Defendant's counsel sent WWW a "Cease & Desist Notice" purporting to object to the WWW Silhouettes Design.  *See* Ex. 1 to the Declaration of R. Salame ("Salame Decl.").  The letter alleged, *inter alia*, that the WWW Silhouettes Design, which was independently created for WWW, was an "unauthorized reproductions of our client's famous artwork and trade dress."  *See* Salame Decl. at ¶ 4; *see also* Ex. 1 to Salame Decl. at 1.

31.    Defendant alleged in its August 10 letter that WWW's use of the WWW Silhouettes Design violated "the Lanham Act, and copyright infringement, under U.S. and California law." *See* Salame Decl. at ¶ 5; *see also* Ex. 1 to Salame Decl. at 1.

32.     Defendant did not allege in its August 10 letter that Plaintiffs' WWW Silhouettes Design is "substantially similar" to that of the Defendant's tissue paper design.

33.     Defendant did not provide in its August 10 letter any evidence that Plaintiffs copied the tissue paper design.

34.     Defendant did not provide in its August 10 letter any evidence that Ms. Bernstein had access to the tissue paper design.

35.     Defendant did not provide in its August 10 letter any evidence that the sections of the tissue paper design that Defendant alleges that Plaintiffs' copied are protected by copyright.

36.     On August 13, 2020, Plaintiffs' counsel responded to the August 10 letter, explaining that they had investigated the design process for the WWW Silhouettes Design, and confirmed that the WWW Silhouettes Design was independently created, and that WWW "did not copy, use, or reproduce any artwork belonging to The Great Eros," nor did anyone at WWW or associated with WWW ever purchase product from The Great Eros or receive product wrapped in the tissue paper.  *See* Salame Decl. at ¶¶ 6–7; *see also* Ex. 2 to Salame Decl. at 1.

37.     Plaintiffs' counsel further identified extensive third party designs of silhouettes of the human form, noting "widely accessible and similar designs in the market place," and provided examples of "similar themed" products.  *See* Salame Decl. at ¶ 8; *see also* Ex. 2 to Salame Decl. at 1–3.

38.     Plaintiffs' provided Defendants confirmation that they performed a review of draft designs that resulted in the WWW Silhouettes Design and conducted interviews with the designers who confirmed they did not have access to The Great Eros' materials.  *See* Salame Decl. at ¶ 9; *see also* Ex. 2 to Salame Decl. at 1.

39.     Plaintiffs' repeatedly requested the alleged evidence that Defendant had to support its claims.  *See* Salame Decl. at ¶ 10.

40.     The last email sent by Plaintiffs' counsel was dated August 18, 2020, and again requested substantiation for Defendant's claims.  Salame Decl. at ¶ 11.  No such evidence was ever provided by Defendant.  Salame Decl. at ¶ 12.  Nor did Defendant's counsel accept the offer by Plaintiffs' counsel to discuss the alleged issues by phone.  Salame Decl. at ¶ 12.

41.     On October 13, 2020, Defendant's counsel sent an email that included a draft complaint alleging copyright infringement and claims for unfair competition under the Lanham Act and states law claims regarding unfair business practices.  *See* Salame Decl. at ¶ 13; *see generally* Ex. 3 to Salame Decl.

42.     As with the letter and email correspondences, Defendant continues to fail to allege in the draft complaint that Plaintiffs' WWW Silhouettes Design is "substantially similar" to that of the Defendant's tissue paper design which shows their alleged copyright claim is not valid or credible.

43.     As shown in the side-by-side image below, Plaintiffs' WWW Silhouettes Design (on the left) is substantially different from Defendant's tissue paper (on the right):

**WWW Silhouettes Design**          **Defendant's tissue paper**



44.    The WWW Silhouettes Design includes rounded curves of the head, arms, legs, and buttocks.  Defendant's tissue paper design has sharp points.

45.    The WWW Silhouettes Design includes the back of heads on multiple sitting women.  Defendant's tissue paper design does not have any heads on any of its silhouettes. Examples of silhouettes including a woman's head in the WWW Silhouettes Design only are highlighted in the image below.

**WWW Silhouettes Design**                **Defendant's tissue paper**



46.     The WWW Silhouettes Design includes the back of a woman's head with her arms over head and bent back like she is stretching or posing, and the side profile of a woman's head with a defined spine.  Defendant's tissue paper design does not include such images.  These images are highlighted in the image above.

47.     The WWW Silhouettes Design includes more of the body parts drawn in so as to clearly show they are body parts.  Defendant's tissue paper design leaves much of the silhouette not drawn, with some images unidentifiable as body parts.  One such unidentifiable part is highlighted in the image below.

| **WWW Silhouettes Design** | **Defendant's tissue paper** |



48.   The WWW Silhouettes Design has silhouettes that fold the legs in more modest ways that a model might pose when showing off a swimsuit.  Defendant's tissue paper design does not include silhouettes in that pose and instead includes poses that expose the bikini area.  These differences in posing are highlighted in the image below.

**<u>WWW Silhouettes Design</u>**  **<u>Defendant's tissue paper</u>**



49.    The WWW Silhouettes Design includes the woman's silhouette turned both directions as the pattern repeats.  Defendant's tissue paper design does not include such mirror image repetition.  This mirror image repetition is shown in the image below.

**WWW Silhouettes Design**              **Defendant's tissue paper**



50.     No one, including Defendant, owns the concept of silhouettes of the human form. As can readily be seen by a review of the two designs above, the designs are not substantially similar, and have many distinguishing characteristics.

**COUNT I**
**DECLARATION OF NON-INFRINGEMENT UNDER THE COPYRIGHT ACT**

51.     Plaintiffs repeat and reallege the allegations contained in Paragraphs 1 to 50 of this Complaint as if fully set forth herein.

52.     Upon information and belief, Defendant applied for a copyright registration for its tissue paper design from the U.S. Copyright Office on October 13, 2020. *See* Ex. 3 to Salame Decl. at ¶ 18.

53.     An actual, present, and justiciable controversy exists between Plaintiffs and Defendant concerning whether Plaintiffs have infringed and are infringing Defendant's purported copyright rights.

54.     This substantial controversy, between parties having adverse legal interests, is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

55.     Plaintiffs have advertised, marketed, offered for sale and sold the products alleged by Defendant to have infringed its purported copyright rights.

56.     Defendant believes and maintains that Plaintiffs products, namely those that use the WWW Silhouettes Design, infringe Defendant's purported copyright rights.

57.     Plaintiffs believe and allege that their products, advertisements and marketing and promotional materials do not infringe upon any valid copyright rights of Defendant.

58.     Plaintiffs allege that Defendant's purported copyright rights are invalid and/or unenforceable.

59.     Plaintiffs allege that Defendant's purported copyright rights, if valid, are exceedingly narrow in scope such that Plaintiffs' sales, advertisements and marketing activities do not constitute an infringement of Defendant's purported copyright rights.

60.     By virtue of the foregoing, Plaintiffs desire a judicial determination of the parties' rights and duties with respect to the purported copyright rights asserted by Defendant.

61.     Plaintiffs seek a declaratory judgment that Defendant is not entitled to any injunctive relief or damages under the Copyright Act.

62.     A judicial declaration is necessary and appropriate at this time so that the parties may proceed in accordance with their respective rights as determined by the Court.

**COUNT II**
**DECLARATION OF NO UNFAIR COMPETITION OR OTHER TORTIOUS**
**ACTIVITY IN VIOLATION OF ANY FEDERAL, STATE, OR COMMON LAW**

63.     Plaintiffs repeat and reallege the allegations contained in Paragraphs 1 to 62 of this Complaint as if fully set forth herein.

64.     An actual, present, and justiciable controversy exists between Plaintiffs and Defendant concerning whether Plaintiffs are unfairly competing with Defendant or have committed any other business torts.

65.     Defendant's draft complaint expressly alleged that Plaintiffs' use of the WWW Silhouettes Design constitutes unfair competition, under federal, state, and common law. Defendant's claim that consumers are likely to be confused, mistaken, or deceived as to the source of goods sold using the WWW Silhouettes Design, and under threat of litigation, demand that Plaintiffs cease and desist selling such goods in United States commerce.

66.     This substantial controversy, between parties having adverse legal interests, is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

67.     Plaintiffs have not competed unfairly with Defendant or engaged in false endorsement.

68.     Plaintiffs seek a declaratory judgment from this Court that use of the WWW Silhouettes Design is not likely to cause confusion as to the source of Plaintiffs' goods with those of Defendant.

69.     Plaintiffs' goods are labeled, advertised, marketed and sold in such a manner that there is no likelihood of confusion between the Defendant's goods sold wrapped in tissue paper bearing the purposed copyrighted design on one hand, and the sale of goods using Plaintiffs' WWW Silhouettes Design on the other.

70.     Accordingly, Plaintiffs are entitled to a judicial declaration that Plaintiffs have not competed unfairly with Defendant or engaged in false endorsement in violation of any federal, state, or common law.

71.     Plaintiffs seek a declaratory judgment that Defendant has suffered no, and will not suffer any, damages or loss of goodwill as a result of the sale of goods using the WWW Silhouettes Design.

72.     Plaintiffs seek a declaratory judgment that Defendant is not entitled to any injunctive relief or damages under the Lanham Act or the common law of the State of New York.

## DEMAND FOR JURY TRIAL

73.     Pursuant to Federal Rule of Civil Procedure 38, Plaintiffs hereby demand a jury trial on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for the following judgment and relief against Defendant:

A.     Declaring that Plaintiffs' conduct, including its marketing and sale of goods using the WWW Silhouettes Design, does not constitute copyright infringement of Defendant's purported copyright;

B.     Declaring that Plaintiffs' conduct, including its marketing and sale of goods using the WWW Silhouettes Design, does not constitute unfair competition under the Lanham Act or under common law;

C.     Declaring that Defendant is not entitled to any injunctive relief with respect to Plaintiffs' sale of goods using the WWW Silhouettes Design;

D.     Declaring that Defendant has not suffered any and will not suffer any harm or damages, and thus is not entitled to any relief under the Copyright Act, the Lanham Act or under common law;

E.     Declaring that Plaintiffs is entitled to sell goods using the WWW Silhouettes Design;

F.     Declaring that Defendant and each of its officers, directors, agents, counsel, servants, employees, and all other persons in active concert or participation with any of them, be restrained and enjoined from alleging, representing, or otherwise stating that Plaintiffs infringes Defendant's copyright or other rights, or initiating any action or proceeding alleging infringement of Defendant's copyright against Plaintiffs or any customers, manufacturers, users, importers, or sellers of Plaintiffs' products;

G.     Awarding Plaintiffs its reasonable attorneys' fees, expenses, and costs incurred in connection with this action; and

H.     Awarding Plaintiffs any such further relief as this Court deems just and proper.

Dated:   New York, New York
         October 15, 2020

Respectfully submitted,

K&L GATES LLP

By:   */s/ Susan M. Kayser*
      Susan M. Kayser (SK 1096)
      K&L GATES LLP
      599 Lexington Avenue
      New York, New York 10022
      Tel.: (212) 536-3900
      Fax: (212) 536-3901
      susan.kayser@klgates.com

      Robert Salame (*pro hac vice application
      forthcoming*)
      K&L GATES LLP
      599 Lexington Avenue
      New York, NY 10022-6030
      Telephone: (212) 536-3904
      Fax: (212) 536-3901
      robert.salame@klgates.com

      Katherine L. Allor (*pro hac vice application
      forthcoming*)
      K&L GATES LLP
      70 W. Madison St., Suite 3300
      Chicago, IL 60602
      Telephone: (312) 372-1121
      Fax: (312) 827-8000
      katy.allor@klgates.com

      *Attorneys for Plaintiffs WeWoreWhat, LLC
      and Onia, LLC*