UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CV COLLECTION, LLC d/b/a THE GREAT EROS,

                          Plaintiff,

                -v-

WEWOREWHAT, LLC ET AL,

                          Defendants.

20 Civ. 8623 (PAE); 21 Civ. 1623 (PAE)

OPINION & ORDER

---

PAUL A. ENGELMAYER, District Judge:

Plaintiff CV Collection, LLC d/b/a The Great Eros ("CV") brings claims for copyright infringement, violations of the Lanham Act, unfair competition, and related state law claims against defendants Weworewhat LLC ("WWW"), Onia, LLC d/b/a Www Apparel ("Onia"), Danielle Bernstein ("Bernstein"), Saks Fifth Avenue, Inc. ("Saks"), Bop LLC ("Bop"), Carbon 38, Inc. ("Carbon"), and Does 1-10 inclusive. The claims arise from defendants' allegedly unauthorized copying and use of CV's "signature" design (the "Design"), which features line drawings of nude women.

Defendants move to dismiss only Count III of the Consolidated Amended Complaint ("CAC"), Dkt. 38, which alleges unfair business practices under California Business and Professions Code §§ 17200, *et seq.* (the California Unfair Competition Law, or "UCL"), for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Defendants also move for sanctions under Federal Rule of Civil Procedure 11. For the following reasons, the Court grants the motion to dismiss in part, denies it in part, and denies the motion for sanctions.

I.  **Background**

   A.  **Factual Background**[1]

CV owns and operates The Great Eros, a fashion label founded by designer Christina Viviana. CAC ¶ 2. Defendant WWW is a fashion label founded by defendant Bernstein, a blogger and social media influencer. *Id.* ¶¶ 3, 11. Defendant Onia is a co-owner of WWW and does business under the business name "Www apparel." *Id.* ¶ 10. Defendant Saks is a New York corporation that operates an e-commerce platform and brick-and-mortar department stores. *Id.* ¶ 12. Saks is alleged to have sold the infringing goods through both its website and these stores. *Id.* Defendant Bop is a Wisconsin LLC alleged to have sold the infringing goods through its e-commerce website. *Id.* ¶ 13. Defendant Carbon is a Delaware corporation that is alleged to have sold the infringing goods on its e-commerce platform and at its brick-and-mortar stores in Bridgehampton, New York, and Pacific Palisades, California. *Id.* ¶ 14.

Since its inception, the CAC alleges, CV has wrapped its products in tissue paper bearing the Design, which consists of a pattern of line-drawn female figures in various poses. *Id.* ¶ 2. Below are examples of the tissue paper bearing the Design:

---

[1] This factual account draws from the CAC. *See DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010) ("In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."). For the purpose of resolving the motion to dismiss under Rule 12(b)(6), the Court presumes all well-pled facts to be true and draws all reasonable inferences in favor of plaintiff. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).



The CAC alleges that at some point, Bernstein and WWW collaborated with Onia to produce and distribute swimwear and other products that the CAC alleges bore its Design (the "infringing goods"). *Id.* ¶ 4. According to the CAC, before producing the infringing goods, Bernstein had visited the showroom of CV's sales representative and inquired about obtaining CV's products in exchange for promoting the label on her social media platforms. *Id.* ¶ 6. This offer was declined, the CAC alleges, but Bernstein, WWW, and/or Onia later purchased products from CV that were wrapped in the tissue paper bearing the Design. *Id.*

The CAC alleges that the infringing goods proved so popular that Bernstein, Onia, and WWW later reprinted the Design on other products including scarves, yoga mats, and wallpaper. *Id.* Below are examples of Bernstein's, Onia's, and WWW's products that allegedly bear the Design:

3



CV alleges that after it demanded that defendants cease use of its Design, Bernstein and WWW claimed that they had not copied the Design, that the Design did not reflect creativity, and that neither Bernstein nor WWW had heard of CV or purchased its products. *Id.* ¶ 5. The CAC further alleges that Bernstein, WWW, and Onia "stepped up their use of the CV Design" after receiving CV's demand. *Id.*

### B. Procedural History of This Action

On October 15, 2020, WWW and Onia filed a declaratory judgment action in this District (the "New York Action") seeking a declaration that WWW and Onia did not infringe the Design and that there had been no unfair competition or violation of state law claims. *See* Dkt. 1.[2]

On November 10, 2020, CV filed a lawsuit (CV's "Original Complaint") against WWW and Onia in the Central District of California, alleging copyright infringement, violations of the Lanham Act, and violations of related state law claims. *See* No. 21 Civ. 1623 (PAE), Dkt. 1 ("Compl.").

---

[2] Except where specified, citations to the docket refer to the docket of this case, No. 20 Civ. 8623 (PAE).

4

On January 26, 2021, defendants moved to dismiss the Original Complaint for improper venue or, in the alternative, to transfer the action and consolidate it with the prior-filed New York Action. *Id.* at Dkt. 22. On February 23, 2021, after the motion to dismiss the Original Complaint was fully briefed, the parties agreed to transfer the case to this District. *Id.* at Dkt. 35. The case was consolidated with the case pending in this District.

On May 3, 2021, the Court ordered CV to file the CAC. Dkt. 37. On May 7, 2021, the CAC was filed; it became the operative complaint. Dkt. 38. On May 21, 2021, defendants moved for partial dismissal. Dkt. 42 ("MTD"). On June 11 and June 18, 2021, respectively, the opposition to dismissal and reply were filed. Dkts. 46 ("Opp'n"), 51.

On June 14, 2021, WWW, Onia, and Bernstein filed a motion for sanctions against CV's counsel. Dkt. 47 ("Mot. Sanctions"). On June 28, 2021, CV opposed the motion; and on July 7, 2021, defendants filed a reply. Dkts. 52, 62. On July 19, 2021, the Court authorized CV to file a sur-reply to enable it to respond to new evidence and arguments raised in defendants' reply. Dkt. 67 ("Sur-reply"). On July 26, CV filed its sur-reply. Dkt. 68.

## II. Discussion

### A. The Motion to Dismiss Count III

Defendants argue that Count III of the CAC, which brings a claim under the UCL, should be dismissed because the CAC does not allege a sufficient connection to violations of law occurring in California. To state a claim under the UCL, "plaintiffs who are not California residents must . . . allege facts to show that the alleged violations occurred within California, because California's unfair competition law does not apply extraterritorially." *Aghaji v. Bank of Am., N.A.*, 247 Cal. App. 4th 1110, 1119 (2016). The Court finds that the CAC pleads a sufficient connection between alleged misconduct and California as to defendant Carbon only.

5

### 1. Legal Standards Under Rule 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint is properly dismissed where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. When resolving a motion to dismiss, the Court must assume all well-pleaded facts to be true, "drawing all reasonable inferences in favor of the plaintiff." *Koch*, 699 F.3d at 145. That tenet, however, does not apply to legal conclusions. *See Iqbal*, 556 U.S. at 678. Pleadings that offer only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

### 2. CV's Threshold Argument Under 12(g)(2)

At the threshold, CV argues that Rule 12(g)(2) bars the motion to dismiss Count III because defendants did not make this argument in their previous motion to dismiss, filed in the Central District of California. *See* No. 21 Civ. 1623, Compl. That motion was mooted when the parties stipulated to transfer the case to this District, where the CAC was then filed. *See* Dkt. 38.

Rule 12(g)(2) provides: "[e]xcept as provided in Rule 12(h)(2) or (3), a party that makes a motion under [Rule 12] must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." Rule 12(h)(2) exempts from this bar any Rule 12(b)(6) defenses raised (A) in an Answer; (B) in a Motion for Judgment on the Pleadings; or (C) at trial. And Rule 12(h)(3) exempts challenges to a court's subject matter jurisdiction.

6

Critically, Rule 12(g)(2) cannot bar a later motion to dismiss where, as here, the plaintiff's amended complaint contains materially different allegations. In the CAC, CV stripped out—from the Original Complaint—all but one reference to misconduct in California. *See* Compl. ¶¶ 9–10; 12–17 (containing allegations regarding sales and marketing decisions made in California, all omitted from the CAC).[3] Any argument that CV's UCL claim ran afoul of anti-extraterritoriality principles would have been premature in defendants' first motion to dismiss, inasmuch as the Original Complaint contained factual allegations about misconduct in California. *See Roma Concrete Corp. v. Pension Assocs.*, No. 19 Civ. 1123, 2019 WL 3683561 (MMB), at *3 (E.D. Pa. Aug. 6, 2019) ("Rule 12(g)(2) does not apply where a plaintiff files an amended complaint containing new factual allegations."); *Kroger Co. v. New Enter. Stone & Lime Co.*, No. 17 Civ. 1541, 2018 WL 4615955 (CMR), at *2 n.12 (E.D. Pa. Sept. 25, 2018). Rule 12(g)(2) therefore does not preclude this motion to dismiss.

### 3. Analysis

CV brings against all defendants a UCL claim, which it terms a "mirror image" of its Lanham Act claim. Opp'n at 1; *see also Cleary v. News Corp.*, 30 F.3d 1255, 1262–63 (9th Cir. 1994) ("Actions pursuant to [the UCL] are substantially congruent to claims made under the Lanham Act.") (internal quotation marks omitted)). As noted, to state a claim under the UCL, plaintiffs who are not California residents must allege facts to show that the alleged violations occurred within California. *Aghaji*, 247 Cal. App. 4th at 1119; *Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191, 1208 (2011) ("Certainly the UCL reaches any unlawful business act or practice committed in California."). As discussed below, CV has satisfied the UCL's anti-

---

[3] The Original Complaint alleged, *inter alia*, that "Defendant's marketing activities at issue in this case were expressly aimed at California residents" and "that . . . the infringing products were sold [in California]," *see* Compl. at 9–10, and contained specific allegations about the infringing goods being sold or marketed in California by each defendant. *See id.* 12–17.

7

extraterritoriality requirement only as to Carbon; but the CAC does not plead sufficient facts to demonstrate misconduct in California on the part of the other defendants. Its UCL claim thus fails as to each of these others.

The CAC alleges that CV and WWW, Onia, Bernstein, and Saks are each based in New York. CAC ¶¶ 8–12. It further alleges that Bop is a Wisconsin-based LLC, and that Carbon is a Delaware-based corporation. *Id.* ¶¶ 13–14. Because neither CV nor any defendant is a California resident, the only available basis for an UCL claim is misconduct that "occur[ed] within or emanate[d] from California." *Castagnola v. Hewlett-Packard Co.*, No. 11 Civ. 5772 (JSW), 2012 WL 2159385, at *4 (N.D. Cal. June 13, 2012).

The CAC, however, contains only one reference to misconduct occurring in California. Specifically, it alleges that "[o]n information and belief Carbon . . . sold the infringing goods to consumers in . . . its brick and mortar retail store[] located in . . . *Pacific Palisades, California.*" CAC ¶ 14 (emphasis added).

In attacking this claim, defendants first argue that the CAC improperly relies on CV's "information and belief" as its basis for alleging where Carbon sold these goods. Defendants argue that CV must plead more to sustain those allegations. That critique is wide of the mark. The CAC alleges a sufficient basis for CV's belief as to where these goods were sold. *Twombly* permits a plaintiff to plead facts on information and belief "where the belief is based on factual information that makes the inference of culpability plausible." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (citations omitted). Here, the CAC alleges that Carbon has only two brick-and-mortar locations, one in California, and also sells goods online. Based on the

limited number of locations, one situated in California, it is plausible to infer that at least some infringing goods were sold out from Carbon's California stores.

Defendants next argue that the CAC does not allege a sufficient connection between the alleged infringement and California. They argue that the "sole reference to [Carbon's] store in California does not support application of California's UCL to Carbon." MTD at 7. In so arguing, defendants rely on *Elzeftawy v. Pernix Grp., Inc.*, which, in dismissing, noted that, for a claimed violation of California law to be viable, "the strength of the connection between the claim and the state of California is vital." 477 F. Supp. 3d 734, 785 (N.D. Ill. 2020). But that case is inapposite. The complaint there brought claims based, *inter alia*, on alleged employment law violations that occurred in South Korea, *id.* at 754, 787. Here, CV squarely alleges, as to Carbon, misconduct in California—specifically, that infringing goods were sold out of Carbon's Pacific Palisades store. CAC ¶ 14. When a complaint alleges that misconduct actually occurred in California, the strength of the connection of the claim to California is not at issue.

Defendants, however, are on a strong footing in alleging that the CAC's allegations do not support a UCL claim against the other defendants. Critically, as alleged, none of the acts of infringement for which the CAC seeks to hold these defendants liable has any nexus to California. And California courts have held that the UCL "may be invoked by out-of-state parties when they are harmed by wrongful *conduct occurring in* California." *Norwest Mortg., Inc. v. Superior Ct.*, 72 Cal. App. 4th 214, 224–25 (1999) (emphasis in original) (internal quotation marks omitted). Given that, the CAC's UCL claims against all other defendants must be dismissed. None is alleged to have had connection to California, let alone to have engaged in misconduct there. *See id.* at 225 (dismissing UCL claim where, as alleged, injuries were suffered by non-California residents, caused by conduct occurring outside of California, by defendants

9

whose headquarters and principal places of operations were outside of California); *Ehret v. Uber Techs., Inc.*, 68 F. Supp. 3d 1121, 1130 (N.D. Cal. 2014) (in examining UCL extraterritoriality concerns, courts focus on where the defendant's conduct took place) (quotation omitted)).

### B. The Motion for Sanctions

Defendants also move for sanctions under Rule 11 against CV. Defendants allege CV filed a baseless complaint, and has refused to withdraw its complaint after purportedly learning that its claims were without merit. According to the motion for sanctions, CV was ostensibly on notice that its claims lacked merit by virtue of defendants' presentation to it of evidence and conclusions drawn from defendants' in-house investigation of the matter.

Defendants seek sanctions in the form of (1) a monetary award against CV's counsel—David A. Erikson, Antoinette S. Waller, the Erikson Law Group, Scott Alan Burroughs, and Jeffrey S. Gluck—representing defendants' attorneys' fees and costs incurred in defending against CV's supposedly baseless allegations; (2) dismissal of the CAC with prejudice; and (3) any such other sanctions as the Court deems just and proper.

For the following reasons, the Court finds that defendants' motion for sanctions is entirely without merit. The motion reflects a misunderstanding of both the litigation process—which does not require opposing counsel pre-discovery to accept the results of an adversary's in-house investigation—and the claims asserted here.

#### 1. Applicable Legal Standards

If "the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c). In its discretion, a Court can award such sanctions where the filing is "being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;" the claims are "[un]warranted by existing law

10

or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;" and "the factual contentions" lack "evidentiary support." *Id.* 11(b). "Such an award serves two ends: it 'vindicat[es] judicial authority,' and it makes the wronged party 'whole for expenses caused by his opponent's obstinacy.'" *Int'l Techs. Mktg., Inc. v. Verint Sys., Ltd.*, Nos. 19-1031, 19-1297, 2021 WL 968819, at *4 (2d Cir. Mar. 16, 2021) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991)).

"Because of its potency, however, a court's inherent power [to sanction] 'must be exercised with restraint and discretion.'" *Id.* at *5 (quoting *Chambers*, 501 U.S. at 44). When it comes to monetary sanctions, a court should sanction only "'bad faith, vexatious[], [or] wanton[]' acts or actions undertaken for 'oppressive reasons.'" *Id.* (quoting *Chambers*, 501 U.S. at 45–46). "[S]eparating frivolous claims from mere zealous advocacy can be difficult," and thus courts are required "to make two findings before imposing such sanctions: first, that 'the challenged claim was without a colorable basis' and, second, that 'the claim was brought in bad faith, *i.e.*, motivated by improper purposes such as harassment or delay.'" *Id.* (quoting *Enmon v. Prospect Cap. Corp.*, 675 F.3d 138, 143 (2d Cir. 2012)). "[B]oth findings 'must be supported by a high degree of specificity in the factual findings.'" *Enmon*, 675 F.3d at 143 (quoting *Wolters Kluwer Fin. Servs., Inc. v. Scivantage*, 564 F.3d 110, 114 (2d Cir. 2009)).

A claim is without colorable basis when it "lacks any legal or factual basis." *Wolters Kluwer Fin. Servs.*, 564 F.3d at 114. "Conversely, a claim is colorable when it has some legal and factual support, considered in light of the reasonable beliefs of the individual making the claim." *Schlaifer Nance & Co. v. Est. of Warhol*, 194 F.3d 323, 337 (2d Cir. 1999) (quotations omitted). As to the bad-faith requirement, bad faith "may be inferred 'only if actions are so completely without merit as to require the conclusion that they must have been undertaken for

11

some improper purpose such as delay'" or harassment. *Id.* at 336 (quoting *Shafii v. Brit. Airways, PLC*, 83 F.3d 566, 571 (2d Cir. 1996)). In determining whether such conduct is sanctionable, a "court should primarily focus on the *intent* of the potentially sanctionable conduct, not on its *effect.*" *Int'l Techs. Mktg.*, 2021 WL 968819, at *5.

### 2. Analysis

Defendants move for sanctions on the ground that the following allegations in the Original Complaint and CAC lack factual support: that (1) WWW and Onia "inexplicably stepped up their use of the CV Design after receiving Plaintiff's protests"; (2) Bernstein visited the showroom of CV's sales representative before producing the infringing goods and inquired about obtaining CV's products in exchange for promoting CV through her social media channels; (3) Bernstein and Onia purchased CV goods and instructed their designers to copy the pattern at issue; and (4) WWW and Onia infringed the copyright in CV's design by copying and reproducing CV's design on the infringing goods. Defendants also fault CV for (5) bringing deficient UCL claims to the extent these lacked a California nexus. Mot. Sanctions 11–14, 17–18. Defendants also assert that CV's counsel filed the Original Complaint in California—after defendants had filed a declaratory judgment action in this District—with the improper purposes of harassing, causing unnecessary delay, and needlessly increasing litigation costs. *Id.* at 15–16.

The Court finds sanctions unwarranted.

As to the second through fourth allegations, defendants move for sanctions based on their factual claim that they independently created the allegedly infringing version of the Design. But CV is not required to accept defendants' version of events. Defendants assert that they presented

12

CV with "unrebutted" and "clear" evidence that ostensibly disproved copying.[4] Mot. Sanctions at 13. This evidence consists principally of an email defendants sent to CV stating that "the allegation [that Bernstein visited the showroom] may actually relate to a PR company that once represented [CV] during a fashion week event . . . [and that] [Bernstein] does not recall specifically being introduced to [CV] at any time. [Bernstein] would not have had access to it since she never bought any product." *Id.* Defendants claim to have found an inspiration deck for their design, which did not include CV's Design; "original" hand sketches of their design; and declarations from in-house designers and other employees denying copying. *Id.* at 5–6. Defendants complain that CV, in contrast, has yet to share with them contrary evidence. *Id.* at 8–9.

Defendants' sanctions motion, premised on the claim that their contrary "evidence" unavoidably defeats CV's claims, overreaches at the present, pre-discovery stage. Defendants' in-house investigation is no substitute for discovery. Defendants' claims as to what the evidence will show are as yet untested by document and deposition discovery. Defendants' records and their witnesses, under oath in depositions, may yield information supportive of CV's claims. And CV, at the pleading stage, was not yet under obligation to produce its evidence of infringement. In any event, whatever force there may prove to be to the evidence that defendants have chosen to showcase, it falls short of showing that CV's allegations are so meritless as to warrant a finding of bad faith. Quite to the contrary, CV can point to evidence consistent with possible copying: defendants admit that Bernstein may have visited a showroom in which CV's products were shown, *id.* at 13, and Dalia Cunow, Onia's creative director, admits that she

---

[4] This evidence was shared with CV only after CV had filed its opposition to the motion for sanctions. Defendants' failure to share this information earlier necessitated a sur-reply from CV. *See* Dkts. 58–61, 67.

13

actually purchased CV's goods, Sur-reply at 3. These facts may prove to be building blocks for CV's claim that defendants knew of its Design, and copied it.

As to the first and fifth grounds for sanctions, neither is convincing. Defendants' forecasts as to what discovery will show do not establish that the CAC was false to claim that defendants "stepped up" use of the Design after learning of CV's claims. CV is entitled to test the evidence on which defendants rely in so arguing—an internal document reporting sales data. And that defendants moved to dismiss the UCL claims—a motion granted only in part—does not establish bad faith, either. Motions to dismiss are commonly granted. A pleading's failure to satisfy Rule 12(b)(6) does not make it frivolous. *See Mareno v. Rowe*, 910 F.2d 1043, 1047 (2d Cir. 1990) ("[N]ot all unsuccessful legal arguments are frivolous or warrant sanction."); *cf. Neitzke v. Williams*, 490 U.S. 319, 326 (1989) (distinguishing between dismissals for frivolousness and under Rule 12(b)(6)).

Defendants, finally, fault CV for filing its Original Complaint in California after defendants' anticipatory declaratory judgment action was brought in this District. Defendants are correct that this District was a proper forum for CV's damages claims. CV's decision to sue in California, rather than bringing claims and counterclaims here, deferred the date on which the parties, in a single forum, could engage on the merits. But it does not follow that CV filed suit in California with the improper purposes of harassing, causing unnecessary delay, and needlessly increasing the cost of litigation. Not infrequently, putative defendants presented with pre-litigation demands in trademark and copyright cases will preemptively file declaratory judgment actions, hoping that their choice of forum will carrying the day under the first-filed doctrine. *See, e.g., Lebewohl v. Heart Attack Grill LLC*, 890 F. Supp. 2d 278, 288 (S.D.N.Y. 2012); *Louise Paris, Ltd. & Ross Stores Inc. v. Fabric Selection, Inc.*, No. 17 Civ. 5697 (JSR), 2017 WL

4776734, at *1 (S.D.N.Y. Oct. 6, 2017); *Comedy Partners v. St. Players Holding Corp.*, 34 F. Supp. 2d 194, 195 (S.D.N.Y. 1999). Although that outcome sometimes holds, in other cases, courts will grant motions to transfer that consolidate the claims in the forum chosen by the "natural plaintiff"—the entity seeking damages. *See, e.g., 800–Flowers, Inc. v. Intercontinental Florist*, 860 F. Supp. 128, 131 (S.D.N.Y. 1994); *Oleg Cassini, Inc. v. Serta, Inc.*, No. 11 Civ. 8751 (PAE), 2012 WL 844284, at *9 (S.D.N.Y. Mar. 13, 2012); *Holey Soles Holdings, Ltd. v. Foam Creations, Inc.*, No. 05 Civ. 6893 (MBM), 2006 WL 1147963, at *9 (S.D.N.Y. May 1, 2006); *Michael Miller Fabrics, LLC v. Studio Imports Ltd., Inc.*, No. 12 Civ. 3858 (KMW) (JLC), 2012 WL 2065294, at *6 (S.D.N.Y. June 7, 2012).

Here, CV represents that Onia and WWW filed the New York action only after receiving a draft copy of CV's California complaint, and after defense counsel asked CV to hold off filing that complaint while counsel conferred with their clients. Opp'n at 5. In that context, CV was well within *its* rights not to defer to defendants' anticipatory action and choice of forum, and to bring its damages claims in the forum that it had envisioned. In any event, CV agreed to consolidate its case with the New York action in this District within three months of filing its original complaint in California, before meaningful progress had been made in the California case. *See* 21 Civ. 1623 (PAE), Dkts. 1, 32. For this reason too, CV's filing of the California action is no more sanctionable than was defendants' decision to front-run the California lawsuit that CV had notified defendants it planned to bring. *See Power Play 1 LLC v. Norfolk Tide Baseball Club, LLC*, No. 17 Civ. 4831 (WHP), 2018 WL 357304, at *3 (S.D.N.Y. Jan. 9, 2018). Both were defensible litigation choices.

Finally, the Court notes, defendants do not dispute that—as to the considerable majority of its claims—the CAC states a claim. And even if the Court were to credit defendants' claim to

have independently developed their design, such would negate the copyright claims only. It would not negate the CAC's trademark claims under the Lanham Act or state law, which do not require proof of deliberate copying. Rather, to prevail on such claims, "'a plaintiff must show (1) that it has a valid mark that is entitled to protection under the Act, and (2) that use of the defendant's mark infringes, or is likely to infringe, the mark of the plaintiff,' meaning that use of the mark 'creates a likelihood of confusion.'" *Phoenix Ent. Partners, LLC v. J-V Successors, Inc.*, 305 F. Supp. 3d 540, 546 (S.D.N.Y. 2018) (quoting *Estee Lauder Inc. v. The Gap, Inc.*, 108 F.3d 1503, 1508–09 (2d Cir. 1997)).[5]

For all the reasons, the Court denies defendants' motion for sanctions as baseless. The Court is similarly unpersuaded by CV's suggestion that defendants' sanctions motion is itself sanctionable. That claim also wrongly conflates meritlessness with frivolousness.

### III. Leave to Replead

Federal Rule of Civil Procedure 15(a)(2) provides that leave to amend a complaint shall be "freely" given when "justice so requires," although a "district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." Here, CV seeks leave to replead its UCL claims to the extent they are dismissed. Opp'n at 14.

Although CV has had an opportunity to amend its complaint, the Court finds leave to replead the dismissed UCL claims merited. CV's opposition brief proffers a factual basis on which it proposes to cure the deficiencies in these claims, to wit, evidence that the non-Carbon

---

[5] To be sure, were the evidence to establish that defendants' design was independently created, such would likely defeat CV's claims of willful infringement, but willfulness is not required to establish infringement (or the critical element in proving infringement, a likelihood of confusion). *See, e.g., 4 Pillar Dynasty LLC v. New York & Co., Inc.*, 933 F.3d 202, 209–10 (2d Cir. 2019).

16

defendants also sold and marketed the infringing goods in California. In particular, CV proposes to restore the allegations to that effect that were contained in the Original Complaint. *Id.* at 14–15. The Court authorizes CV to file a Second Amended Complaint within two weeks of this decision. No further opportunities to amend CV's complaint, however, will be afforded.

## CONCLUSION

For the foregoing reasons, the Court grants the motion to dismiss, in part, in that it dismisses the CAC's UCL claims against all defendants other than Carbon. The Court otherwise denies the motion to dismiss, and also denies the motion for sanctions. The Clerk of Court is respectfully directed to terminate the motions pending at Dockets 42 and 47.

SO ORDERED.

*Paul A. Engelmayer*
Paul A. Engelmayer
United States District Judge

Dated: October 22, 2021
    New York, New York